THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 07-CV-00768-JAB-PTS

| | |
|---|---|
| NICHOLAS BARTNIKOWSKI, AIMEE MOORE, and AMBER WILCOX, Individually and on behalf of all persons similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| NVR, Inc. | )<br>) |
| Defendant. | )<br>) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS ALL COUNTS OF THE COMPLAINT**

Defendant NVR, Inc. ("NVR") moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss both counts of the Amended Complaint in this matter for failure to state a claim as to which relief can be granted.

Count I of Plaintiffs' Amended Complaint purports to state a claim for overtime pay under the North Carolina payment of wages statute, N.C. Gen. Stat. § 95-25.6. This count must be dismissed because North Carolina law does not provide Plaintiffs with a right to overtime pay, and Plaintiffs have improperly attempted to use the state's payment of wages statute to collect overtime that they claim to be owed under the federal Fair Labor Standards Act ("FLSA"). Indeed, this action, which is a companion case to a pending overtime pay action based on federal law, is nothing but an attempt to subvert the procedural mechanism that the U.S. Congress has prescribed for FLSA claims.

Count II of Plaintiff's Amended Complaint purports to state a claim of breach of contract. However, the Amended Complaint fails to make any factual allegation that could support that

cause of action, including even the minimal allegation that a contract between Plaintiffs and NVR existed at any time. The Court should, therefore, dismiss this matter in its entirety.

## BACKGROUND

NVR is in the business of building homes for its customers in residential subdivisions or "communities" in Kentucky, Maryland, Michigan, Virginia, West Virginia, Pennsylvania, New York, New Jersey, Delaware, Ohio, North Carolina, South Carolina, and Tennessee. NVR's Sales and Marketing Representatives ("SMRs") sell the homes to be built in the communities in which NVR operates, together with the home sites on which the homes are to be constructed. NVR pays its SMRs on a commission basis and treats them as outside sales personnel who are exempt from the minimum wage and overtime pay requirements of federal law. Am. Compl. ¶ 21.

This action is a spin-off from an overtime case pending in the U.S. District Court for the Western District of New York, *Tracy, et al. v. NVR, Inc.*, docket no. 04-06541 ("*Tracy*"). In *Tracy*, which was filed in October 2004, Plaintiffs asserted an FLSA collective action overtime pay claim and putative class action claims under the laws of several states, including North Carolina. A true and accurate copy of the Second Amended Complaint in *Tracy* is attached as Exhibit A. Defendant moved to dismiss the state law claims (other than those under New York law) from *Tracy* in April 2007 on the grounds that the simultaneous litigation of a multitude of foreign state law claims in a single action would present intractable case management problems for the parties and the Court. *See Tracy*, docket entries 91, 92. On June 14, 2007, the Court granted NVR's motion and dismissed the foreign state law claims from the case pursuant to 28 U.S.C. § 1367(c). *See Tracy*, docket entry 135; *see also* Am. Compl. ¶ 2. At the same time, the *Tracy* court certified the FLSA claim in that matter as a collective action and authorized Plaintiffs' counsel to send notices and consent to join forms for all SMRs who have worked for

2

CLT 1081730v1

Case 1:07-cv-00768-JAB-PTS   Document 11   Filed 10/23/07   Page 2 of 12

NVR anywhere in the country at any time since October 29, 2001. *Id*. The opt-in period in *Tracy* closed on September 12, 2007, and as of that date, approximately 14 individuals who worked for NVR in North Carolina joined the case as opt-in plaintiffs, including all three named Plaintiffs in the present case, Nicholas Bartnikowski, Aimee Moore, and Amber Wilcox. *See Tracy*, docket entries 26, 115, 180. In fact, Mr. Bartnikowski has also become a named plaintiff in *Tracy*. *See* Exhibit A, p. 1.

Plaintiffs commenced the present action on or about July 18, 2007, in the Durham County Superior Court.[1] In this action, Plaintiffs dispute NVR's classification of its SMRs as exempt outside sales personnel and seek to recover overtime pay for hours worked in excess of forty per week on behalf of a subset of the individuals eligible to participate in Tracy, specifically all "current and former individuals who worked for [NVR] at any of defendant's North Carolina locations and who held the position of [SMR]; and were not paid overtime." Am. Compl. ¶ 9.

## ARGUMENT

Count I of the Amended Complaint fails because Plaintiffs cannot recover overtime pay under North Carolina law. Notably, Plaintiffs claim to be owed overtime only by operation of a federal statute, and they may not use the state payment of wages statute as a vehicle to collect federally-mandated pay. Plaintiffs' statutory claim in this matter should also be dismissed as an improper effort to subvert the opt-in collective action procedure that is mandated for federal overtime claims. Count II of the Amended Complaint fails because Plaintiffs have not asserted – and cannot assert – any factual basis for that claim.

---

[1] NVR removed the case to this Court pursuant to the Class Action Fairness Act, 29 U.S.C. § 1332(d), on October 16, 2007.

3

CLT 1081730v1

## I. North Carolina Law Does Not Provide Plaintiffs a Right to Overtime Pay

North Carolina law provides no basis for Plaintiffs to recover overtime compensation from NVR. Plaintiffs do not and cannot assert a claim against NVR under North Carolina's overtime pay law because NVR's status as an entity subject to the FLSA *exempts* it from the state overtime pay law.[2] Unable to recover under the overtime pay statute, Plaintiffs instead purport to assert a claim under North Carolina's wage payment statute, N.C. Gen. Stat. § 95-25.6.[3] *See* Am. Compl. ¶ 29. However, that statute includes no mention of overtime and merely requires employers to "pay all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6. As such, Plaintiffs are seeking to collect the same overtime pay that they claim to be owed under the FLSA – and for which they have already sued under the FLSA in a separate action – by disguising those federal claims as putative claims under the North Carolina payment of wages statute.

This claim fails because FLSA-mandated overtime is not a "wage" within the meaning of the North Carolina payment of wages statute. For purposes of the state statute, the term "wage" includes only sums that an employer has agreed to pay an employee, either by expressly stating an intent to pay such sums or by adopting an actual practice of paying such sums to its employees. N.C. Gen. Stat. § 95-25.2(16) (defining "wage" as "amounts promised when the

---

[2] The North Carolina overtime pay statute requires that employers "pay each employee who works longer than 40 hours in any workweek at a rate of not less than time and one half of the regular rate of pay. . ." N.C. Gen. Stat. § 95-25.4(a). However, that statute does not apply to employers that, like Defendant, are covered by the FLSA. *See* N.C. Stat. § 95-25.14(a) (1) (exempting from the coverage of North Carolina's minimum wage and overtime laws "Any person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act"). In their Second Amended Complaint in *Tracy*, Plaintiffs affirmatively allege that NVR is subject to the FLSA. *See* Exhibit A, ¶¶ 16-17. Having asserted FLSA claims against NVR, Plaintiffs cannot contend simultaneously that NVR is subject to the North Carolina overtime pay statute.

[3] Plaintiffs' Amended Complaint alleges that NVR has "violated its obligations under North Carolina Law including, but not limited to N.C. Gen. Stat. § 95-25.6." Am. Compl. ¶ 30. To the extent that Plaintiffs may respond to by arguing that they have asserted any statutory claim other than the one expressly pled in their Amended Complaint, that argument must fail. A nebulous allegation that NVR has violated "North Carolina Law" is plainly insufficient to meet the standard for pleading a claim for relief established by recent Supreme Court precedent, as discussed in Section III, below.

CLT 1081730v1

employer has a policy or practice of making such payments"); *cf. Whitley v. Horton*, 168 N.C. App. 597 (table), 2005 WL 351143 (N.C. App. 2005) (adopting limited interpretation of "wage" and declining to extend payment of wages claim to sums not covered by statute).[4] The statutory definition does not include sums allegedly due either by operation of federal law or for any reason other than the employer's promise or agreement to pay such sums. For this reason, the North Carolina courts have rejected attempts to collect sums allegedly due under federal law through the state's payment of wages statute.[5] *Hyman v. Efficiency, Inc.*, 167 N.C. App. 134, 145 (N.C. Ct. App. 2004) (rejecting employees' class action claim under § 95-25.6 for pay allegedly due under FLSA, because "[t]he employment contract does not provide for the compensation the class members seek"); *Whitehead v. Sparrow Enter., Inc.*, 167 N.C. App. 178, 188 (N.C. Ct. App. 2004) (same). In reaching this result, the courts have declined plaintiffs' requests to look beyond the language contained in their agreements with their employers and examine federal statutes. *See Hyman*, 167 N.C. App. At 144. Against this background, it is clear that under North Carolina law, "wages" do not include any sums that an employer allegedly is obligated to pay under a federal statute such as the FLSA. The Court should, therefore, dismiss Count I of Plaintiffs' Amended Complaint for failure to state a claim on which relief can be granted.

---

[4] Copies of all unpublished decisions cited in this Memorandum are attached as Exhibit B to this memorandum.

[5] In some circumstances, courts have allowed a plaintiff class to pursue a North Carolina payment of wages claim that was co-extensive with a claim under the FLSA. *See Barton v. Pantry, Inc*., 2006 WL 1367421 (M.D.N.C. 2006); *Zelaya v. J.M. Macias, Inc*., 999 F. Supp. 788 (E.D.N.C. 1998). However, the state law claims in those cases were based on the employers' alleged violation of its own policies, and no court has suggested that it is proper for plaintiffs to collect sums owed by operation of the FLSA through the state statute. *See Barton,* 2006 WL 1367421, *1 (discussing plaintiffs' allegations that defendant violated their own policy on payment of wages to employees by altering time cards); *Zelaya*, 999 F. Supp. at 781-82 (noting that plaintiffs allege that defendants orally agreed to "pay all wages at the legally required overtime rate").

5

CLT 1081730v1

Case 1:07-cv-00768-JAB-PTS   Document 11   Filed 10/23/07   Page 5 of 12

## II. Plaintiffs' Efforts to Pursue Their Federal Overtime Claims under State Law are Designed to Subvert Federal Policy

Plaintiffs' state law claims are transparently designed to evade the FLSA's congressionally mandated opt-in collective action procedure and allow them to represent individuals who have chosen not to join *Tracy*. The Court should not allow Plaintiffs to subvert Congress' intent by using an inappropriate state law vehicle to assert federal claims.

Congress intended claims for FLSA-mandated overtime to be brought exclusively on behalf of those individuals who expressly consent to join an overtime pay action. FLSA claims are governed by the statute's collective action provisions, which require each member of the class to file a consent to participate in the litigation. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Consequently, numerous courts have recognized that the FLSA's collective action procedures are incompatible with the Rule 23 opt-out class action device.[6] Courts have also recognized that the FLSA's opt-in procedure is not an accident, but is the result of deliberate federal policy making.[7] By

---

[6] *See LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) ("There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)."); *Zelaya v. J.M. Macias, Inc.*, 999 F. Supp. 778, 782-83 (E.D.N.C. 1998) (dismissing Rule 23 North Carolina state law claims as incompatible with collective action mechanism governing FLSA claims in same action); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 58 (W.D. Tex. 2003) ("Rule 23 and § 216(b) class actions are mutually exclusive and irreconcilable. . .") (citation and internal quotation omitted); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 n. 1 (E.D.N.Y. 1988) ("Section 216(b) displaces the class action devices of Fed.R.Civ.P. 23, which are accordingly unavailable in [cases governed by that section.]"); *Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 780-81 (E.D. Mich. 1971) *aff'd* 453 F. 2d 1259 (6th Cir. 1971) ("Claims . . . under the Fair Labor Standards Act . . . cannot be maintained as a class action under Rule 23.").

[7] *See, e.g., De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003) ("[M]andating an opt-in class or an opt-out class is a crucial policy decision. Congress has selected an opt-in class for FLSA actions.") (citations omitted); *Lindsay v. Gov't Employees Ins. Co.*, 355 F. Supp. 2d 119, 121 (D. D.C. 2004) ("There are powerful policy considerations that led Congress to amend the FLSA to require employees wishing to join FLSA actions to affirmatively opt-in via individual written consents.") (citation and internal quotations omitted); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) ("Mandating an opt-in class or an opt-out class is a crucial policy decision . . . [and] Congress created the opt-in procedure for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions.") (citations and internal quotations omitted); *Rodriguez v. The Texan, Inc.*, 2001 WL 1829490, *2 (N.D. Ill. 2001) ("There are powerful public policy considerations that led Congress to . . . require the opt-in procedure via individualized written consents by employees wishing to join such actions.") (citation omitted).

requiring each class member in an FLSA collective action to affirmatively opt-in to the litigation, the federal legislature intended to limit employers' exposure to representative actions under the FLSA. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (observing that Congress created FLSA opt-in procedure "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions"); *De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003) (Congress enacted FLSA opt-in procedure "to define and limit the jurisdiction of the courts" and "curb the number of [FLSA] lawsuits") (citations and internal quotations omitted). Congress, therefore, by adopting the § 216(b) opt-in procedure, intentionally exempted FLSA claims, like those asserted in Count I of the Amended Complaint, from the Rule 23 class action mechanism.

Here, Plaintiffs' efforts to flout federal policy are particularly acute because they are seeking only to assert FLSA overtime pay claims on behalf of individuals who have knowingly chosen not to participate in *Tracy*. As noted above, the putative class in this matter is merely a subset of the class at issue in *Tracy*. Those individuals who have joined *Tracy*, including the named Plaintiffs in this matter, have nothing to gain in this case. The North Carolina wage payment statute provides no remedy that is not also available to Plaintiffs if they succeed on the FLSA overtime claims they have asserted in *Tracy*.[8] Only those who have knowingly declined Plaintiffs' invitation to join the *Tracy* action have any prospect of recovery in this action.

Allowing Plaintiffs to bring claims for federally-mandated overtime compensation under state law using the Rule 23 opt-out mechanism would vitiate the opt-in procedure of the FLSA's

---

[8] The North Carolina wage payment statute provides for liquidated damages (subject to a good faith defense), costs and fees of the action, and reasonable attorneys' fees. N.C. Gen. Stat. §§ 95-25.22(a1)-(d). These remedies are all available under the FLSA. 29 U.S.C. § 216(b) (providing for liquidated damages and costs of suit, including attorneys' fees). Moreover, the statute of limitations on a claim under North Carolina payment of wages statute is no longer than the statute of limitations under the FLSA. *Compare* N.C. Gen. Stat. § 95-25.22 (two-year statute of limitations on North Carolina wage claims) *with* 29 U.S.C. § 255(a) (two-year statute of limitations under FLSA, extended to three years for willful violations).

7

collective action provisions. Many states have prompt payment of wages laws like North Carolina's.[9] If employees were allowed to assert claims for FLSA-mandated overtime under state payment of wages statutes, as Plaintiffs seek to do here, the FLSA's collective action procedures would be eviscerated and the congressional intent underlying those procedures would be defeated.

The fact that Plaintiffs' state law claims are designed to subvert federal policy provides an independent ground for the dismissal of Count I. Courts have overwhelmingly recognized that plaintiffs should be prohibited from using state law claims under Rule 23 to expand the scope of federal FLSA cases.[10] In a recent case remarkably similar to the present action, Judge Young of the U.S. District Court for the District of Massachusetts dismissed claims that sought to recover FLSA-mandated overtime through the New Hampshire payment of wages statute, which is virtually identical to N.C. Gen. Stat. § 95-25.6. *See Trezvant, et al. v. Fidelity Employer Servs. Corp.*, 434 F. Supp. 2d 40, 54-56 (D.Mass. 2006). Like North Carolina, New Hampshire

---

[9] *See, e.g.*, Cal. Lab. Code §§ 201-204; Conn. Gen. Stat. §§31-71b, 31-71c; Ind. Code § 22-2-5-1; Mass. Gen. Laws ch. 149, § 148; Minn. Stat. §§ 181.101, 181.13; N.H. Rev. Stat. Ann. §§ 275:43(I), 275:44(I-II); N.Y. Lab. Law § 191; S.D. Codified Laws §§ 60-11-10, 60-11-11; Wis. Stat. § 109.03; Va. Code Ann. § 40.1-29; Wash. Rev. Code § 49.48.010.

[10] *See, e.g., De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003) (holding trial court erred in allowing plaintiffs to proceed with payment of wages claims under state law as Rule 23 class action because it expanded the number of class members in FLSA case and caused "a federal tail to wag what is in substance a state dog"); *Lindsay*, 355 F. Supp. 2d at 121 (allowing plaintiffs to proceed with state law claims under Rule 23 "would circumvent the opt-in requirement mandated by Congress in federal FLSA actions."); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004) ("the policy behind requiring FLSA plaintiffs to opt in to the class would largely be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.") (citation and internal quotations omitted); *McClain*, 222 F.R.D. at 577 (plaintiffs "cannot circumvent the [FLSA's] opt-in requirement and bring unnamed parties into federal court by calling upon state statutes . . ."); *Harper v. Yale Int'l Ins. Agency, Inc.*, 2004 WL 1080193, *5 (N.D. Ill.) (dismissing state law claims where plaintiffs subverted congressional intent by seeking to expand FLSA class by asserting state law claims under Rule 23); *Bartleson v. Winnebago Indus., Inc.*, 219 F.R.D. 629, 637-38 (N.D. Iowa 2003) (prohibiting plaintiffs from asserting state law claims under Rule 23 on behalf of individuals who did not affirmatively consent to join FLSA class as inappropriate attempt to circumvent FLSA opt-in procedure); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 (W.D. Tex. 2003) (allowing plaintiffs to use state law claims under Rule 23 to expand scope of class "would flaunt the Congressional intention that FLSA claims proceed as an opt-in scheme"); *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, 2002 WL 1359411, *2 (N.D. Ill. 2002) (in an FLSA collective action "it makes no real sense . . . to certify a [state law Rule 23] class that will *automatically* include all of the employees unless they opt out") (emphasis in original).

maintains an overtime pay statute but expressly exempts from its coverage employers that are subject to the FLSA. *Id.* at 54. Like the North Carolina law, the New Hampshire payment of wages statute includes a definition of "wages" that is limited to sums that an employer has agreed to pay to its employees. *Id.* at 55. And, like Plaintiffs here, the employees in the *Trezvant* action "alleged that [the employer] violated [state] law by not paying them overtime wages that were due to them under the [FLSA]." *Id.* The *Trezvant* court found the employees' state law payment of wages claim to be an improper attempt to subvert the FLSA's prescribed opt-in procedural mechanism and dismissed those claims with prejudice. *Id.* at 58. This Court should reach the same conclusion.

### III. Plaintiffs' Contract Claim is Wholly Unsupported by Even Minimal Factual Allegations

Plaintiffs also attempt to repackage their FLSA overtime pay claims as violations of North Carolina law by asserting a breach of contract claim. In Count II of their Amended Complaint, Plaintiffs summarily allege that "Defendant willfully violated their [sic] obligations under the laws of North Carolina and are liable to plaintiffs." Am. Compl. ¶ 32. This anemic assertion falls far short of the recently clarified standard for stating a claim on which relief can be granted.

A conclusory allegation that a party has violated the law fails to state a viable claim. As the Supreme Court noted earlier this year, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [(as required by Fed. R. Civ. P. 8(a)(2))] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (May 21, 2007) (citation omitted).[11] In Count

---

[11] Even before *Twombly*, the United States Court of Appeals for the Fourth Circuit recognized that conclusory allegations were insufficient to survive a motion to dismiss. *See In re: Visual Networks, Inc. Sec. Litig.*, 217 F. Supp. 2d 662, 665 (D. Md. 2002) ("The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations,

9

CLT 1081730v1

Case 1:07-cv-00768-JAB-PTS   Document 11   Filed 10/23/07   Page 9 of 12

II of their Amended Complaint, Plaintiffs' efforts to assert a breach of contract claim are even more vacuous than the "formulaic recitation of elements" that the Supreme Court found insufficient in *Twombly*. Plaintiffs have failed to allege even that a contract between NVR and its SMRs exists – the most basic element of a breach of contract claim. Plaintiffs certainly provide no basis for a claim that any such contract included an agreement by NVR to provide overtime pay to any SMR. Indeed, the factual allegations Plaintiffs offer to support their statutory claim preclude any assertion that NVR agreed to pay overtime to any SMR. *See* Am. Compl. ¶ 21 ("Throughout their tenures with defendant named plaintiffs worked as SMRs . . . were classified as exempt employees by defendant and were not paid [overtime]."). Plaintiffs thus fail to state a claim on which relief can be granted, and the Court should dismiss Count II of the Amended Complaint.

## CONCLUSION

Plaintiffs statutory overtime pay claims in this matter fail because North Carolina law does not provide Plaintiffs with a right to overtime and because the claims in Count I of the Amended Complaint constitute an improper attempt to subvert the federal policy underlying the FLSA. Plaintiffs' breach of contract claims fail because they offer no factual allegations that could support such a claim.

WHEREFORE, for the reasons stated above, Defendant NVR, Inc. respectfully requests that the Court dismiss this matter in its entirety.

---

*Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).")

This 23rd day of October, 2007.

                      <u>s/ Keith M. Weddington</u>
                      Keith M. Weddington (NC Bar #14352)
                      Kendra W. Thornton (NC Bar # 32335)
                      Parker Poe Adams & Bernstein L.L.P.
                      Three Wachovia Center
                      401 South Tryon Street
                      Suite 3000
                      Charlotte, NC  28202
                      Phone: (704) 335-9062
                      Fax: (704) 334-4706

                      *Local counsel for Defendant NVR, Inc.*

                      Lorie E. Almon (admission *pro hac vice* pending)
                      Devjani Mishra (admission *pro hac vice* pending)
                      Seyfarth Shaw LLP
                      620 8th Avenue
                      32nd Floor
                      New York, New York 10018-1405
                      Phone: (212) 218-5500
                      Fax: (212) 218-5526

                      Richard L. Alfred (admission *pro hac vice* pending)
                      Barry J. Miller (admission *pro hac vice* pending)
                      Seyfarth Shaw LLP
                      Two Seaport Lane, Suite 300
                      Boston, MA 02210
                      Phone: (617) 946-4800
                      Fax: (617) 946-4801

                      *Lead counsel for Defendant NVR, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that, on this date, I caused a copy of the foregoing *"Defendant's Memorandum in Support of its Motion to Dismiss All Counts of the Complaint"* to be served via electronic mail and addressed as follows:

>Caitlyn Fulghum
>THE FULGHUM LAW FIRM, PLLC
>100 East Parrish Street
>Suite 300
>Durham, NC 27701

This is to certify on this date I served the foregoing *"Defendant's Memorandum in Support of its Motion to Dismiss All Counts of the Complaint"* by depositing a copy thereof in the United States mail, postage prepaid, and addressed as follows:

>J. Nelson Thomas
>Cristina A. Bahr
>DOLIN, THOMAS & SOLOMON, LLP
>693 East Avenue
>Rochester, NY 14607

This the 23rd day of October, 2007.

>s/ Kendra Worley Thornton
>Kendra Worley Thornton
>N.C. Bar. # 32335
>Parker Poe Adams & Bernstein L.L.P.
>Three Wachovia Center
>401 South Tryon Street, Suite 3000
>Charlotte, NC 28202
>Phone: (704) 335-9086
>Fax: (704) 335-9728

12

CLT 1081730v1

Case 1:07-cv-00768-JAB-PTS   Document 11   Filed 10/23/07   Page 12 of 12