IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NICHOLAS BARTNIKOWSKI, AIMEE MOORE and AMBER WILCOX, Individually and on behalf of all persons similarly situated, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>NVR, Inc., )<br>)<br>Defendant. )<br>_____) | 1:07CV00768 |

MEMORANDUM OPINION

This action arises out of a dispute between Plaintiffs Nicholas Bartnikowski, Aimee Moore, and Amber Wilcox, individually and on behalf of all persons similarly situated, and Defendant NVR, Inc. regarding overtime compensation that Plaintiffs contend they are owed under North Carolina state law. This matter is presently before the Court on Plaintiffs' Motion to Remand [Doc. #20]. For the reasons set forth below, Plaintiffs' Motion to Remand will be granted.

I. BACKGROUND

Plaintiffs, who bring this action themselves and on behalf of current and former employees of Defendant who worked at any of Defendant's locations in North Carolina as Sales and Marketing Representatives ("SMRs"), have alleged that they were not paid time-and-one-half the regular rate of compensation for all hours worked exceeding 40 hours in a week. On July 18, 2007, Plaintiffs filed suit in the Superior Court of Durham County, North Carolina and

subsequently filed an Amended Complaint on September 21, 2007.[1] The Amended Complaint alleges violations of North Carolina common law and North Carolina wage-and-hour laws including, but not limited to, North Carolina General Statute § 95-25.6. (Am. Compl. [Doc. #4] ¶¶ 30, 32.) Defendant removed this action to this Court on October 16, 2007, pursuant to 28 U.S.C. §§ 1441 and 1446, alleging federal subject matter jurisdiction based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Notice of Removal [Doc. #1].) Plaintiffs subsequently filed the present Motion to Remand [Doc. #20] which is now before the Court.[2]

CAFA provides, in part, that the district courts shall have original jurisdiction of a class action in which (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) any member of the class is a citizen of a State different from any defendant; and (3) the class includes 100 or more class members. 28 U.S.C. § 1332(d)(2), (d)(5). The sole dispute between the parties in the present case is whether the amount in controversy

---

[1] Plaintiffs' state law claims were previously included with federal claims filed by Plaintiffs and others under the Fair Labor Standards Act in the Western District of New York in October 2004. See Patrick Tracy, et al. v. NVR, Inc., No. 04CV06541 (W.D.N.Y.). The Tracy case, which is still pending, asserts federal claims on behalf of all of NVR's affected employees nationwide. Plaintiffs attempted to bring their state law claims along with their federal claims in a single action in the federal action in New York, but it was Defendant who successfully argued that the federal court in New York should decline to exercise supplemental jurisdiction over the state law claims, based on Defendant's contention that the state law claims were better suited for resolution by the respective states' own courts. The District Court for the Western District of New York therefore declined to exercise supplemental jurisdiction over the state law claims, including the North Carolina law claims asserted here.

[2] Defendant has also filed a Motion to Dismiss [Doc. #10] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, upon motion by Plaintiffs, the Court extended Plaintiffs' time to respond to Defendant's Motion to Dismiss and stayed consideration of the motion until the resolution of Plaintiffs' Motion to Remand. (See Order [Doc. #37].) Because the Court will grant Plaintiffs' Motion to Remand, Defendant's Motion to Dismiss is moot.

exceeds $5,000,000, exclusive of interest and costs.

II. DISCUSSION

    A. BURDEN OF PERSUASION

The well-established rule, espoused repeatedly by the Court of Appeals for the Fourth Circuit, is that a removing defendant bears the burden of demonstrating the existence of federal jurisdiction. See, e.g., Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Soon after the enactment of CAFA, some district courts, relying on the Senate Judiciary Committee Report on CAFA, S. Rep. 109-14, *as reprinted in* 2005 U.S.C.C.A.N. 3, held that when a defendant removes a case from state court and alleges federal jurisdiction under CAFA, the burden of persuasion shifts to the plaintiff to prove that federal jurisdiction does not exist. See, e.g., Dinkel v. Gen. Motors Corp., 400 F. Supp. 2d 289, 295 (D. Me. 2005). However, this argument has been rejected by all five courts of appeals to consider the issue. See Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 404-05 (6th Cir. 2007); Lowery v. Ala. Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007); Lowdermilk v. United States Bank Nat'l Ass'n, 479 F.3d 994, 996 (9th Cir. 2007); Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006); Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006). District courts in this circuit have also held that CAFA did not shift the burden of persuasion from the defendant. See McMahon v. Advance Stores Co., Inc., No. 5:07CV123, 2008 WL 183715, *2 (N.D.W. Va. Jan. 18, 2008) (slip opinion); Strawn v. AT&T Mobility, Inc., 513 F. Supp. 2d 599, 604 (S.D.W. Va. 2007); Lanier v. Norfolk Southern Corp., No. 1:05-3476, 2006 WL 1878984, *2 (D.S.C. July 6, 2006) (slip opinion); Adams v. Ins. Co. of North America, 426 F. Supp. 2d 356, 367 (S.D.W. Va. 2006). In

Adams, the court also observed that this is likely how the Fourth Circuit would resolve the issue. See Adams, 426 F. Supp. 2d at 367. This Court agrees with the reasoning of these cases. Therefore, this Court concludes that when a defendant removes a case from state court and alleges federal jurisdiction pursuant to CAFA, as in the case presently before the Court, the burden remains on the defendant to prove the propriety of federal jurisdiction, including proving that the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, as required to establish federal jurisdiction under CAFA.

B. EVIDENTIARY STANDARD

When a plaintiff invokes federal diversity jurisdiction by filing suit in federal court, the amount claimed in the complaint controls in assessing the amount in controversy, unless it appears to a "legal certainty" from the face of the complaint that the claim is really for less than the jurisdictional amount. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938); Shanaghan v. Cahill, 58 F.3d 106, 112 (4th Cir. 1995). However, this rule "expressly applies only in instances in which a plaintiff invokes federal jurisdiction by filing a case in federal court." Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 935 (S.D.W. Va. 1996). In contrast, when the plaintiff files suit in state court with an unspecified demand for damages,[3] and the defendant removes the case to federal court, the

---

[3] In the present case, Plaintiffs' demands for relief include: "an order preliminarily and permanently restraining defendant from engaging in aforementioned pay violations; an award of plaintiffs' unpaid wages, including fringe benefits; all relief available under North Carolina law; an award of reasonable attorneys fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights; an award of pre- and post-judgment interest; and such other and further legal or equitable relief as this Court deems to be just and appropriate." (Am. Compl. [Doc. #4].)

Fourth Circuit has held that the defendant bears the burden of proving the requisite jurisdictional amount, but the Fourth Circuit has not adopted a specific standard of proof by which to judge the defendant's showing. See Rota v. Consolidation Coal Co., 175 F.3d 1016, No. 98-1807, 1999 WL 183873, at *1 n.4 (4th Cir. Apr. 5, 1999) (unpublished table opinion) (declining to adopt a particular standard of proof for assessing the value of an unspecified damage claim).

However, this Court has previously considered this question and has concluded that where a defendant removes a state court action in which the plaintiff has made an unspecified claim for damages under state law, the defendant must establish the requisite jurisdictional amount by a preponderance of the evidence. See Dash v. FirstPlus Home Loan Trust, 248 F. Supp. 2d 489, 497 (M.D.N.C. 2003) (noting that "this Court has previously followed the approach taken by other courts in the Middle District of North Carolina on the issue, and will continue to apply the 'preponderance of evidence' standard"); Lawson v. Tyco Elecs. Corp., 286 F. Supp. 2d 639, 641 (M.D.N.C. 2003) (applying Dash v. Firstplus, 248 F. Supp. 2d at 497, and holding that preponderance of the evidence, not legal certainty, is the appropriate test); see also Faircloth v. Nat'l Home Loan Corp., 313 F. Supp. 2d 544, 549 (M.D.N.C. 2003) (denying plaintiff's motion to remand because defendant had proved by a preponderance of the evidence that the jurisdictional amount was satisfied), aff'd, 87 Fed. Appx. 314 (4th Cir. 2004) (unpublished) (affirming denial of remand without deciding which test should apply, because defendant had met both the "preponderance of the evidence" and the "legal certainty" tests). Another court in this circuit, the Southern District of West Virginia, has similarly concluded that

"[a] defendant that removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount." Landmark, 945 F. Supp. at 935; see also Strawn v. AT&T Mobility, Inc., 513 F. Supp. 2d 599, 604 (S.D.W. Va. 2007) (adopting Landmark reasoning in CAFA case); Crosby v. CVS Pharm., Inc., 409 F. Supp. 2d 665, 668 (D.S.C. 2005) (holding that the preponderance of the evidence standard "strikes an appropriate balance between a defendant's right of removal and a plaintiff's right to be master of his own claim"); Chandler v. Cheesecake Factory Rests., Inc., 239 F.R.D. 432, 438-39 (M.D.N.C. 2006) (noting the trend in this circuit to hold the defendant to the preponderance of the evidence standard).

Therefore, in light of this authority, the Court finds that it is appropriate to require the removing defendant in a CAFA case to prove by a preponderance of the evidence that the amount in controversy, exclusive of interest and costs, exceeds $5,000,000. "This test is framed alternatively as a requirement that a defendant demonstrate that it is more likely than not that the amount in controversy exceeds the jurisdictional amount." Landmark, 945 F. Supp. at 935.

In addition, it is also well-established that removal statutes must be strictly construed in light of the significant federalism concerns raised by removal jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868, 872, 85 L. Ed. 1214 (1941); Healy v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 703, 78 L. Ed. 1248 (1934). If the propriety of federal jurisdiction is doubtful, a remand is necessary. Mulcahey, 29 F.3d at 151. Defendant, however, relying on Senate Report 109-14, argues against this established rule, stating that "any doubt

6

regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction."[4] (Def.'s Opp'n to Pls.' Mot. to Remand [Doc. #33] at 2.) However, as the Eleventh Circuit has pointed out, "CAFA itself is silent on the matter. The rule of construing removal statutes strictly and resolving doubts in favor of remand, however, is well-established. . . . Statements in CAFA's legislative history, standing alone, are a insufficient basis for departing from this well-established rule." Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006); see also Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 405 (6th Cir. 2007) (in a CAFA case, stating that all doubts as to the propriety of removal are resolved in favor of remand); Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683-86 (9th Cir. 2006) (same, and pointing out that legislative history is used to resolve ambiguities, not a legislation's silence on an issue, and stating that "CAFA's silence, coupled with a sentence in a legislative committee report untethered to any statutory language, does not alter the longstanding rule that the party seeking federal jurisdiction on removal bears the burden of establishing jurisdiction"). This Court, therefore, finds no reason to defer to Defendant's interpretation of Senate Report 109-14 for guidance on the appropriate exercise of jurisdiction under the circumstances of this case, and the Court will instead follow the general rule that removal statutes are to be strictly construed with any doubts resolved in favor of remand.

Therefore, based on the authority and determinations set out above, the Court concludes

---

[4] The portion of the report cited by Defendant reads, "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." S. Rep. 109-14, at 42 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 40.

that in the present case, Defendant has the burden to prove, by a preponderance of the evidence, that the amount in controversy in this case exceeds $5,000,000 as required to establish federal jurisdiction under CAFA, but this provision must be strictly construed and any doubt regarding the propriety of removal or the existence of federal jurisdiction will be resolved in favor of remand.

### C. DEFENDANT'S EVIDENCE

In applying this standard in the present case, Plaintiffs, at the outset, argue that Defendant has failed to meet its burden because Defendant's Notice of Removal offers no evidentiary support for the existence of federal jurisdiction and merely contains a conclusory statement that the amount in controversy exceeds $5,000,000. (Pls.' Mem. of Law in Supp. of Mot. to Remand [Doc. #21] at 3.) However, the Court notes that generally, nothing more is required of Defendant's Notice of Removal itself. It is only when jurisdictional allegations are challenged that the proponent of federal jurisdiction must demonstrate that removal is proper:

> [J]ust as a plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that the parties are of diverse citizenship and that the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332, so too does a removing party's notice of removal sufficiently establish jurisdictional grounds for removal by making jurisdictional allegations in the same manner. Of course, on a challenge of jurisdictional allegations, the party seeking removal bears the burden of demonstrating that removal jurisdiction is proper.

Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008) (internal quotations and citations omitted).

In the present case, after Plaintiffs filed their Motion to Remand challenging the Notice of Removal's jurisdictional allegations, Defendant indeed responded with evidence that

8

Defendant contends shows that the amount in controversy does exceed $5,000,000. The Court will therefore consider this and any evidence in the record that is relevant to determining the amount in controversy at the time of removal, in analyzing whether Defendant has established that the jurisdictional amount is satisfied.[5] See e.g., Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000) (holding that a district court may consider post-removal evidence in determining whether the jurisdictional amount was satisfied at the time of removal); see also Republic Bank & Trust Co. v. Kucan, 245 Fed. Appx. 308, 315-16 (4th Cir. 2007) (per curium) (unpublished) (remanding case to district court to conduct appropriate inquiries as to whether the requisite jurisdictional amount is met).

Defendant, relying on the Declaration of Dennis Littell [Doc. #33 Ex. B], calculates the damages on Plaintiffs' claims to be in excess of $5,000,000. (Def.'s Opp'n to Pls.' Mot. to Remand [Doc. #33] at 6.) However, the Court has reviewed the evidence and Defendant's contentions, and concludes that Defendant's estimation of damages is speculative at best, as it relies on an assumption unsupported by the record and an ambiguous, undefined unit of measurement.

Specifically, Defendant attempts to make an assessment as to the amount of potential damages by calculating the potential amount of overtime wages that were not paid. Mr. Littell,

---

[5] Defendant filed a Motion for Leave to Submit Additional Evidentiary Support in Opposition to Plaintiffs' Motion to Remand [Doc. #34] seeking to submit the Affirmation of Patrick Tracy [Doc. #35 Ex. 1]. Because Defendant is entitled to submit such evidence in its effort to establish that the jurisdictional amount is satisfied, the Court will allow Defendant's Motion for Leave to Submit this affidavit, and the Court has considered the evidence contained therein, as discussed below.

9

Defendant's Payroll Director, provided what he asserts is the average annual compensation paid to SMRs working in North Carolina between August 2004 and July 2005 and between August 2005 and July 2007. (Decl. of Littell ¶¶ 4, 7.) From those figures, Defendant calculated what it contends is the average rate of potential overtime compensation. (Def.'s Opp. to Pls.' Mot. to Remand [Doc. #33] at 4.) Defendant then makes the assumption, without explanation or evidentiary support, that SMRs working in North Carolina during those time periods are claiming to have worked an average of 5 hours of overtime per week. (Id.)

Defendant attempts to justify its assumption, although unsuccessfully, with the Affirmation of Patrick Tracy [Doc. #35 Ex. 1]. Mr. Tracy is a former NVR employee who has brought similar claims for overtime compensation in New York.[6] According to Defendant, Mr. Tracy stated in his Affirmation that he "worked an average of 55 hours per week" and that this is representative of the work performed by members of the class in this case. (Def.'s Mem. in Supp. of Mot. for Leave to Submit Additional Evidentiary Supp. [Doc. #35] at 2.) Accordingly, Defendant claims that its assumption of an average of 5 hours of overtime per week is actually an underestimation. (Def.'s Reply [Doc. #38] at 3.) However, it must be noted that Mr. Tracy only worked as an SMR for Defendant until August 2005 and only in the State of New York. (Affirmation of Tracy ¶¶ 2, 66-72.) Thus, he is not necessarily representative of the class members in the present North Carolina state law case, since he worked in a different state during an earlier time period than that being considered in this case. Furthermore, the Affirmation of

---

[6] Mr. Tracy's Affirmation was filed in the separate case brought by Plaintiffs and others pursuant to the federal Fair Labor Standards Act, which is currently pending in the Western District of New York. See n.1, supra.

Mr. Tracy does not state what Defendant contends that it does. The two paragraphs cited by Defendant state in their entirety:

> Thus, visiting two lots, in one month, equates to 40 minutes a month. If working four 55-hour weeks in a month (or 220 bonus hours = 13,200 minutes in a month) my lot visits outside the model took less than 1% of the time. Even if I had worked only 40 hours a week (equating to 160 hours per month = 9600 minutes), such visits still took less than 1% of my time a month.
> . . . .
> Because of the extra hours I worked on my scheduled days off, and the days I stayed past the model home open hours, I frequently worked over forty hours in a week.

(Affirmation of Tracy ¶¶ 60, 89.) Thus, notwithstanding Defendant's contentions, nowhere in the affidavit does Mr. Tracy state that he worked an average of 55 hours per week or that this was typical of members of the class in this case. Defendant's assumption that the class members in this case are all bringing claims for working 5 hours of overtime per week every week for the relevant period is simply not supported by the record.

Even if Defendant's assumption of an average of 5 hours of overtime per week were accepted, Defendant's calculation of damages would not be cured of speculation. Central to Defendant's calculations is the use of the factor "person-months." According to Mr. Littell, SMRs working in North Carolina between August 2004 and July 2005 "worked a total of 483 person-months" and SMRs working in North Carolina between August 2005 and July 2007 "worked a total of 1,174 person-months." (Decl. of Littell ¶¶ 5, 8). Within each time period, Defendant multiplies the average amount of potential unpaid overtime per SMR per

11

month by the total number of "person-months" worked.[7] But there is no indication of what "person-month" means in this context, how it is determined, or what it represents. The use

---

[7] For example, Defendant contends that the average annual compensation for SMRs working in North Carolina between August 2005 and July 2007 was $145,892 per SMR per year, and that during that time period SMRs in North Carolina worked a total of 1,174 "person-months." (Decl. of Littell ¶¶ 4, 5.) From the average annual compensation, Defendant suggests that one can calculate the average amount of unpaid overtime per SMR in the following manner: First, the average annual compensation ($145,892) is divided by 52 weeks per year, then divided by 40 hours per week, which yields an average hourly rate of $70.14 per hour. This average hourly rate of $70.14 is multiplied by 1.5 (time and one-half), which yields a purported average hourly rate of overtime compensation of $105.21 per hour. However, Defendant does not explain the basis for its "average annual compensation" figure, and Defendant does not explain whether or how these amounts are appropriately converted to an average hourly rate for all SMRs. Defendant then multiplies this purported "average hourly overtime rate" by the assumed, unsupported figure of 5 hours of overtime per week for each SMR, which yields an average, assumed overtime loss of $526.05 per SMR per week. This $526.05 weekly figure is multiplied by 4.333 weeks per month, which yields an average, assumed overtime loss of $2,279.37 per SMR, per month. (Cf. Def.'s Opp. to Pls.' Mot. to Remand at 4 n.4, 5.) Defendant then multiplies this average, assumed overtime loss of $2,279.37 per SMR per month by the 1,174 "person-months" worked by SMRs in North Carolina during the 24-month period from August 2005 through July 2007, to yield an estimation of damages of $2,676,000. (Def.'s Opp. to Pls.' Mot. to Remand at 4.) Defendant then multiplies this number by two on the assumption that Plaintiffs are asserting a claim for statutory damages under North Carolina General Statute § 95-25.22, although that statute is not mentioned in the Amended Complaint, resulting in Defendant's estimated damages of $5,352,000 on the statutory claim. (Id.) See N.C. Gen. Stat. § 95-25.22(a1) (authorizing doubling of damages subject to good faith defense). However, Defendant's calculation apparently assumes that the 1,174 "person-months" worked by SMRs in North Carolina equates to approximately 49 SMRs working full time in North Carolina over the relevant 24-month period, who would each be entitled to claim overtime compensation for the assumed 5 hours of overtime per week for every week during that 24-month period. Defendant does not, however, present any evidence in support of this assumption, nor does Defendant explain how that calculation is consistent with a necessary class size of over 100 SMRs. Defendant is presumably aware of the actual number of SMRs working at least 40 hours per week in North Carolina during the relevant period who could potentially be part of the class claiming lost overtime compensation. Instead of providing this information in support of their contentions, however, Defendant layers multiple, unsupported assumptions in their calculations, leaving their final estimations speculative and without sufficient evidentiary support.

12

of this undefined unit of measurement calls for too many assumptions and raises too many doubts as to the validity of Defendant's calculation of damages.

Other than Defendant's speculative calculations, there is nothing in the record which could allow a reasonable estimation of the amount in controversy. Defendant nevertheless argues that the requisite amount is met if the Court considers Plaintiffs' damages over an extended relevant time period and if attorneys' fees are included (Def.'s Opp'n to Pls.' Mot. to Remand [Doc. #33] at 6-8). However, neither of these factors is sufficient to establish the amount in controversy without some supporting evidence or basis to provide a reasonable estimation of potential damages for the Plaintiffs. Because Defendant's offer of proof relies entirely on its speculative calculation of damages, which in turn relies on an unsupported assumption and an undefined, ambiguous term, the Court finds that Defendant has failed to show by a preponderance of evidence that the amount in controversy, exclusive of interest and costs, exceeds $5,000,000. Because Defendant has failed to make the requisite showing, and because the propriety of federal jurisdiction is doubtful in light of the absence of a specified jurisdictional element, the Court concludes that remand is appropriate, and Plaintiffs' Motion to Remand will be granted.[8]

---

[8] The Court notes that remand is particularly appropriate in these circumstances given the early stage of the litigation and the uncertainty regarding the actual size of the class itself and the size of the claims asserted, where Plaintiffs contend that for their part, they "simply do not have adequate evidence at this time to arrive at an informed opinion regarding the scope or size of the claims at issue in this class action." (Pls.' Mem. of Law [Doc. #36] at 2.) Following remand, though, should Plaintiffs in the state court proceedings subsequently provide an amended pleading, motion, or other document from which it can be ascertained that this case would satisfy CAFA's jurisdictional requirements, under 28 U.S.C. § 1446(b) Defendant would have thirty days to file a renewed Notice of Removal. See 28 U.S.C. § 1446(b) ("If the case

13

D.  ATTORNEYS' FEES

Both parties ask the Court to award attorneys' fees and costs associated with Plaintiffs' Motion to Remand.  (Def.'s Opp'n to Pls.' Mot. to Remand at 8-12; Pls.' Mem. of Law in Supp. of Mot. to Remand at 4.)  The circumstances here do not warrant an award of attorneys' fees and costs to either party.  Accordingly, Plaintiffs' and Defendant's request for attorneys' fees and costs will be denied.

III.  CONCLUSION

Because Defendant failed to present evidence showing by a preponderance of the evidence that the amount in controversy meets the requisite jurisdictional amount, and because as a result the propriety of federal jurisdiction remains doubtful, Plaintiffs' Motion to Remand [Doc. #20] will be GRANTED.  The requests for attorneys' fees and costs associated with Plaintiffs' Motion to Remand will be DENIED.

An Order consistent with this Memorandum Opinion will be entered

---

stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."); see also 28 U.S.C. § 1453(b) (noting that the one-year limitation on removals under § 1446 does not apply to class actions); Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 691 (9th Cir. 2006) (affirming remand in CAFA case and noting that the parties would "not be prejudiced in their opportunity to develop the record with regard to the amount in controversy by return to state court [because] [u]nder CAFA, class actions and mass actions may be removed at any point during the pendency of litigation in state court, so long as removal is initiated within thirty days after the defendant is put on notice that a case which was not removable based on the face of the complaint has become removable. . . . [and] as state court class action and mass action plaintiffs now run the risk that their case can be removed at any stage of the litigation, there is no longer an incentive for them to remain cagey about the amount in controversy until the one-year window of § 1446(b) has closed.").

contemporaneously herewith.

        This, the 19th day of June, 2008.

_____<br>United States District Judge